JPL/MGD:PJC
F. #2022R00246

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                         Docket No. 23-CR-158 (RPK)

KATHLEEN BREAULT and
KELLY MCDERMOTT,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -X


THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS


                                       GLENN S. LEON
                                       Chief, Fraud Section
                                       Criminal Division
                                       U.S. DEPARTMENT OF JUSTICE

                                       BREON PEACE
                                       United States Attorney
                                       EASTERN DISTRICT OF NEW YORK


Patrick J. Campbell
Trial Attorney

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

    I.      The Indictment is Legally Sufficient ................................................................................. 3

          A.      Legal Standard ........................................................................................................ 3

          B.      Discussion ............................................................................................................... 6

                1.      The Indictment Adequately Alleges Conspiracy to Defraud the United States ................................................................................. 6

                2.      Breault's Factual Disputes are Not a Basis to Dismiss the Indictment ............. 8

                3.      The Indictment Sufficiently Alleges that the Object of Defendants' Conspiracy was to Obstruct the Lawful Function of a Federal Agency ........... 9

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

CASES

Costello v. United States,
   350 U.S. 359 (1956) ............................................................................................................... 4

United States v. Alfonso,
   143 F.3d 772 (2d Cir. 1998) .................................................................................................... 4

United States v. Dawkins,
   999 F.3d 767 (2d Cir. 2021) .................................................................................................... 8

United States v. de la Pava,
   268 F.3d 157 (2d Cir. 2001) ................................................................................................. 4, 6

United States v. Gambino,
   809 F. Supp. 1061 (S.D.N.Y. 1992) ........................................................................................ 6

United States v. Ji,
   No. 21-CR-265 (PKC), 2022 WL 595259 (E.D.N.Y. Feb. 28, 2022) ...................................... 8

United States v. Kelly,
   462 F. Supp. 3d 191 (E.D.N.Y. 2020) ................................................................................. 4, 5

United States v. Kerik,
   615 F. Supp. 2d 256 (S.D.N.Y. 2009) ..................................................................................... 4

United States v. Laurent,
   861 F. Supp. 2d 71 (E.D.N.Y. 2011) ................................................................................... 6, 9

United States v. Liu,
   No. 22-1082, 2022 WL 14177192 (2d Cir. Oct. 25, 2022) .................................................... 13

United States v. Lopez Bello,
   No. 19 Cr. 144 (AKH), 2023 WL 3199968 (S.D.N.Y. May 2, 2023) .................................. 7, 8

United States v. Nunez,
   375 F. Supp. 3d 232 (E.D.N.Y. 2018) ..................................................................... 4, 5, 9, 11

United States v. Perez,
   575 F.3d 164 (2d Cir. 2009) ............................................................................................ 5, 8, 9

United States v. Reale,
   No. 96-CR-1069 (DAB), 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997) .................................. 6

United States v. Shellef,
   507 F.3d 82 (2d Cir. 2007) .................................................................................................... 13

United States v. Urso,
　369 F. Supp. 2d 254 (E.D.N.Y. 2005) ......................................................................................... 5

United States v. Wedd,
　993 F.3d 104 (2d Cir. 2021) .................................................................................................. 5, 9

United States v. Wydermyer,
　51 F.3d 319 (2d Cir. 1995) ........................................................................................................ 5

United States v. Yannotti,
　541 F.3d 112 (2d Cir. 2008) ........................................................................................... 4, 5, 7, 8

United States v. Zarrab,
　No. 15 Cr. 867 (RMB), 2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) ...................................... 7

RULES

Fed. R. Crim. P. 7(c)(1) .................................................................................................................. 4

PRELIMINARY STATEMENT

Defendants do not dispute—indeed, one of them admits—the crux of the factual assertions in the Indictment:  During an unprecedented global health crisis when thousands of Americans were dying of COVID-19, Defendants engaged in a scheme to obtain thousands of COVID-19 vaccination cards and thousands of doses of lifesaving vaccines with the purpose of destroying those doses and forging vaccination records that falsely reported that their owners had been vaccinated.  According to defendant Kathleen Breault, she "help[ed] obtain vaccine cards for those who wanted to avoid . . . vaccines," ECF No. 30-2, Breault Affidavit ("Aff.") ¶ 11. This is precisely what the Indictment alleges: that she and co-defendant Kelly McDermott "conspire[d] to impede, impair, obstruct and defeat the lawful government functions of [the U.S. Department of Health and Human Services] and [U.S. Centers for Disease Control and Prevention] . . . in the administration and distribution of COVID-19 vaccines and COVID-19 Vaccination Cards" by "forging COVID-19 Vaccination Cards to indicate that unvaccinated persons had received COVID-19 vaccines."  (ECF No. 1 ("Indictment" or "Ind.") ¶¶ 16, 25.)

Notwithstanding her sworn admission of the essential allegations in this conspiracy case and the plain sufficiency of the detailed speaking Indictment, Breault asserts that the drastic remedy of dismissal is appropriate because her conduct is not proscribed by law, she lacked the applicable mens rea to commit the crime charged, and the evidence does not support the allegations.  (See ECF No. 30-1, Breault Memo. of Law ("Breault Motion" or "Breault Mot.") at 5–6.)  McDermott urges dismissal on the grounds that the Indictment fails to allege obstruction of a "federal government function" and that 18 U.S.C. § 371 is void for vagueness as applied to her conduct.  (See ECF No. 31, McDermott Memo. of Law ("McDermott Motion" or "McDermott Mot.").)  A trial—not a motion to dismiss—is the appropriate forum to test the

1

sufficiency of the government's evidence, and the government has satisfied its modest pleading burden because its allegations track the statutory language. The Court should deny Defendants' Motions.

## BACKGROUND[1]

During a roughly nine-month period spanning approximately June 2021 to March 2022, Breault, McDermott, and Co-Conspirator-1 agreed to provide fraudulent COVID-19 vaccination cards to more than 2,600 individuals who were not actually vaccinated against COVID-19. (See Ind. ¶¶ 16, 22.) Breault and McDermott, who operated Sage-Femme Midwifery PLLC ("Sage-Femme"), fraudulently obstructed the government's administration and distribution of COVID-19 vaccines, specifically the Centers for Disease Control ("CDC") and the U.S. Department of Health and Human Services' ("HHS") lawful government functions of administering and distributing COVID-19 vaccines and ensuring accurate proof of vaccination in COVID-19 vaccination cards. (Id. ¶¶ 1–3, 16, 25.)

Defendants executed their scheme by submitting enrollment paperwork to the New York Department of Health ("DOH"), including a memorandum of understanding ("MOU"), in which McDermott falsely agreed on behalf of Sage-Femme to comply with all New York state and federal laws governing vaccine administration. (Id. ¶ 17.) In furtherance of the conspiracy, McDermott enrolled as a COVID-19 vaccine administrator to provide her patients with the opportunity to obtain "proof" of COVID-19 vaccination without actually being vaccinated. (Id. ¶ 18.) To achieve this goal, among others, Breault and Co-Conspirator-1 held

---

[1] The factual background set forth below is merely a summary of relevant facts. The government has not endeavored to set forth all facts that it expects to prove at trial, including through witness testimony and documentary and other evidence, and does not intend this to be a full proffer of evidence.

2

purported vaccination clinic days at Sage-Femme, during which, rather than administer the vaccines, Breault and Co-Conspirator-1 destroyed thousands of COVID-19 vaccines, forged thousands of COVID-19 vaccination cards to give the false appearance that the recipients of the cards had received a COVID-19 vaccine dose, and made thousands of entries in the New York State Immunization Information System ("NYSIIS") falsely indicating that these individuals had been vaccinated. (Id. ¶ 20.)

On April 11, 2023, Defendants were indicted and charged with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. (See Ind.) Breault and McDermott have now moved separately to dismiss the Indictment.

ARGUMENT

I.  The Indictment is Legally Sufficient

The Indictment alleges each element of the crime of conspiracy to defraud the United States, and nothing further is required to withstand a motion to dismiss. Notwithstanding the additional details provided in the speaking Indictment, Defendants move for dismissal. Breault's motion is seemingly predicated on the grounds that the Indictment fails to allege a crime and that the government lacks sufficient evidence to convict her. (Breault Mot. at 5–7.) McDermott's motion claims that the Indictment fails to allege that the object of the conspiracy was to obstruct a lawful function of a federal agency, meaning that the administration of COVID-19 vaccines was a state, not federal, government function, and that, as applied to her, Section 371 is void for vagueness. (McDermott Mot. at 7–13.) As discussed in more detail below, these arguments are meritless and the Court should reject them.

A.  Legal Standard

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United

3

States, 350 U.S. 359, 363 (1956).  Accordingly, motions to dismiss indictments are disfavored and must satisfy a high standard.  See United States v. de la Pava, 268 F.3d 157, 165 (2d Cir. 2001) ("The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." (citation omitted)); United States v. Kelly, 462 F. Supp. 3d 191, 195 (E.D.N.Y. 2020) (same); United States v. Nunez, 375 F. Supp. 3d 232, 238 (E.D.N.Y. 2018) ("A motion to dismiss an indictment must satisfy a high standard." (citation omitted)); United States v. Kerik, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (same).

An "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [she] must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  The Federal Rules of Criminal Procedure require only that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "An indictment . . . need not be perfect, and common sense and reason are more important than technicalities."  de la Pava, 268 F.3d at 162.

The Second Circuit has made clear that an indictment satisfies the requirements of Rule 7(c) if it "do[es] little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted).  For example, in Yannotti, the Second Circuit upheld an indictment charging RICO conspiracy that the defendant claimed "included overly broad temporal and geographic spans," did not detail the alleged "conspiratorial conduct," and did not identify the alleged co-conspirators.  Id.  In upholding the indictment, which merely tracked the

4

language of the statute, the court concluded that the "contested portions of the [indictment] provided Yannotti with sufficient notice of the allegations . . . so that he could defend against those allegations in the instant prosecution and in any future prosecutions." Id.

"'It is well-settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.'" United States v. Wydermyer, 51 F.3d 319, 325 (2d Cir. 1995) (quoting Wong Tai v. United States, 273 U.S. 77, 81 (1927)); United States v. Urso, 369 F. Supp. 2d 254, 268 (E.D.N.Y. 2005) (citing Wydermyer, 51 F.3d at 326) ("[T]o prevail on their claim that the conspiracy count of the indictment is insufficient, the defendants must show that the indictment is not sufficient to identify the offense which the defendant conspired to commit.").

On a motion to dismiss, the court must accept all of an indictment's factual allegations as true. See Nunez, 375 F. Supp. 3d at 238. Moreover, "the pleading standard for an indictment is entirely separate from the evidentiary standard at trial," and courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense" until after trial. United States v. Wedd, 993 F.3d 104, 120–21 (2d Cir. 2021). Put another way, an indictment need not "detail the specific facts of the underlying scheme[]" to survive a Rule 12 motion. Id. at 121. Thus, a defendant's factual arguments challenging facially valid pleadings do not justify pre-trial dismissal of an indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for judgment of acquittal. Kelly, 462 F. Supp. 3d at 197; see also United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("Defendants . . . had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Laurent, 861

5

F. Supp. 2d 71, 110 (E.D.N.Y. 2011) ("A technically sufficient indictment thus 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.'" (quoting Alfonso, 143 F.3d at 776–77)); United States v. Reale, No. 96-CR-1069 (DAB), 1997 WL 580778, at *7 (S.D.N.Y. Sept. 17, 1997) ("Defendants confuse standards of pleading with standards of proof."); United States v. Gambino, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992) ("[D]efendant may not challenge a facially valid indictment prior to trial for insufficient evidence.").

    B.    Discussion

Defendants do not even come close to satisfying their high burden to show that the "extraordinary remedy" of dismissing the well-pleaded Indictment is warranted here. de la Pava, 268 F.3d at 165 (citation omitted). While their motions attempt to pre-litigate factual issues, such as the NY DOH's involvement in COVID-19 vaccine administration, the intended uses of the vaccination cards, and Breault's motive—namely, that she was purportedly "act[ing] out of her conscience"—for destroying COVID-19 vaccines and forging vaccination cards, none of these factual arguments are relevant as to whether the Indictment sufficiently alleges the crime of conspiracy to defraud the United States. The Indictment is sufficient as a matter of law, and the Court should deny Defendants' Motions.

    1.    The Indictment Adequately Alleges Conspiracy to Defraud the United States

Breault summarily argues that the Indictment is deficient because it does not cite a specific law that criminalizes her conduct. (Breault Mot. at 5.) Not so. Because the Indictment tracks the language of the statute Defendants allegedly violated—which is all that is required by Second Circuit precedent—the Court should deny Breault's Motion.

6

Courts routinely hold that tracking the statutory language of the crime charged is sufficient to defeat a motion to dismiss an indictment. See, e.g., Yannotti, 541 F.3d at 127 (citation and internal quotation marks omitted) ("[A]n indictment need do little more than track the language of the statute . . . ."); United States v. Lopez Bello, No. 19 Cr. 144 (AKH), 2023 WL 3199968, at *2 (S.D.N.Y. May 2, 2023) (denying motion to dismiss indictment charging 18 U.S.C. § 371); United States v. Zarrab, No. 15 Cr. 867 (RMB), 2016 WL 6820737, at *3–5 (S.D.N.Y. Oct. 17, 2016) (same).

The Lopez Bello decision is instructive. In that case, the court made clear that fraud alleged under Section "371 . . . reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" Lopez Bello, 2023 WL 3199968, at *2 (citation omitted). Since the "[i]ndictment track[ed] the language of the statute and allege[d] acts by [defendant] and his co-conspirators [in furtherance of the conspiracy,]" the court held that the Section 371 "allegations [were] sufficient" and denied the motion to dismiss. Id.; see also Zarrab, 2016 WL 6820737, at *3 (denying motion to dismiss 18 U.S.C. § 371 count where the "[i]ndictment clearly sets forth each of the elements of a Klein conspiracy").

The statute-tracking language in the Indictment demands the same result. Paragraphs 25 and 26 of the Indictment track the language of 18 U.S.C. § 371 and allege overt acts that Breault, McDermott, and Co-conspirator-1 committed in furtherance of the alleged conspiracy to defraud the United States and its departments and agencies. (Ind. ¶¶ 25–26.) That alone is sufficient for the Court to deny Breault's Motion. Yannotti, 541 F.3d at 127.

But the Indictment goes much further. It not only tracks the statutory language of the charged offense, but it also contains pages of specific and detailed factual assertions

7

regarding the manner and means in which Defendants carried out their fraudulent scheme. See United States v. Dawkins, 999 F.3d 767, 779–80 (2d Cir. 2021) ("[T]he Superseding Indictment was a 'speaking indictment' that provided . . . more than enough background to inform the defendant of when and where the offense conduct took place."); United States v. Ji, No. 21-CR-265 (PKC), 2022 WL 595259, at *6–7 (E.D.N.Y. Feb. 28, 2022) ("[T]he [g]overnment's inclusion of additional detail in the [speaking indictment] does not subject the [g]overnment to an 'enhanced pleading requirement'"; "facial validity entails 'little more than track[ing] the language of the statute charged.'"). The detailed factual allegations in the speaking Indictment allege Defendants' knowledge of and participation in the charged offense, including that (1) McDermott falsely certified her compliance with all federal and state laws governing vaccine administration, (2) Breault and Co-conspirator-1 destroyed vials of COVID-19 vaccines, (3) Defendants forged and distributed forged COVID-19 vaccination cards, and (4) Defendants created more than 2,600 false entries in the NYSIIS, thereby negatively impacting COVID-19 vaccine distribution and "obstructing HHS and CDC's efforts to vaccinate the public and ensure accurate proof of vaccination." (Ind. ¶¶ 16–22.) These fulsome allegations more than satisfy the government's modest pleading burden, and the Court should deny Breault's Motion. See Yannotti, 541 F.3d at 127; Lopez Bello, 2023 WL 3199968, at *2.

        2.      Breault's Factual Disputes are Not a Basis to Dismiss the Indictment

Breault also appears to suggest—contrary to settled law making clear that factual disputes are not proper in a motion to dismiss an indictment—that the facts do not support the government's charge. (See, e.g., Aff. ¶ 4 ("I was not a 'provider' . . ."), ¶ 9 ("[T]he federal government was not engaging in lawful function . . ."); Breault Mot. at 2 ("[T]he discovery provided by the government to date does not support this claim . . ."), 3 ("There is no evidence . . ."), 4 ("There is nothing provided in the Indictment to support this assertion.").) She

8

also seeks to prematurely litigate the merits of the case. (See, e.g., Breault Mot. at 6 ("[T]he United States government is the entity which defrauded the public."), 7 ("Ms. Breault stood against this onslaught and should be awarded a medal, not subject to punishment.").) While Breault seemingly has many self-serving opinions of the facts—which opinions are embedded in numerous sworn admissions of the essential conduct at issue in this case—they provide no basis for the Court to dismiss the indictment.

In assessing a motion to dismiss an indictment, the Court must accept all factual allegations as true. See Nunez, 375 F. Supp. 3d at 238. There is no basis to the Court to assess the sufficiency of the government's evidence at this stage—that task is reserved for the jury. Perez, 575 F.3d at 166 ("Defendants . . . had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); Laurent, 861 F. Supp. 2d at 110 ("A technically sufficient indictment thus 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.'"). Accordingly, the Court should deny Breault's Motion.

    3. <u>The Indictment Sufficiently Alleges that the Object of Defendants' Conspiracy was to Obstruct the Lawful Function of a Federal Agency</u>

McDermott ignores the plain language of the Indictment in arguing that the Indictment fails to allege that the charged conspiracy was to obstruct a lawful function of a federal agency and that vaccine administration was a state, not federal, function. (McDermott Mot. at 7–12.) Since the Indictment's plain language alleges a conspiracy to defraud federal agencies—the HHS and CDC—of their lawful government functions, the Court should deny McDermott's Motion.

McDermott ignores the detailed and specific allegations in the Indictment by claiming that there is no allegation that "defendants intended to or took any action to prevent the

9

vaccinations of anyone" or that "the possession of 'forged vaccination cards obstructed any federal agency function." (Id. at 10.) The Indictment describes the relevant lawful functions of the CDC and HHS with respect to vaccines and disease prevention: "The CDC was established to protect public health through the prevention of disease," Ind. ¶ 7, "the CDC prepared for widespread administration of the vaccine doses," id. ¶ 11, and "[t[he CDC and HHS also developed rules and protocols for the entities that would administer the COVID-19 vaccine at locations around the country," id. It also alleges that McDermott, Breault, and others "engaged in a scheme to fraudulently obstruct the government's administration of COVID-19 vaccines" by enrolling as a vaccine administrator specifically to obtain genuine COVID-19 Vaccination Cards—which were emblazoned with the HHS and CDC logos—so that they could forge those cards with false information about vaccine administrations that did not occur to make "it falsely appear that these individuals had received a dose of the vaccine that had, in fact, been destroyed." (Id. ¶¶ 16–20.) And it further alleges that their conspiracy "allowed individuals to falsely present themselves as vaccinated, obstructing HHS and CDC's efforts to vaccinate the public and ensure accurate proof of vaccination." (Id. ¶ 20.) In short, the plain language of the Indictment is a complete rebuttal to McDermott's argument.

    McDermott also asserts that "there is no allegation that Defendants knew or intended for the recipients of the 'forged' cards to in turn use them to impede or obstruct CDC functions." (McDermott Mot. at 8.) This misses the mark because the Indictment specifically alleges that Defendants conspired with others to thwart HHS and the CDC's lawful government function of "vaccinat[ing] the public and ensur[ing] accurate proof of vaccination." (Ind. ¶ 20.) Indeed, as made clear on the face of the Indictment, the object of the conspiracy was not simply to "provide 'forged' cards to third parties," as McDermott claims, see McDermott Mot. at 8, but

10

rather to "obstruct HHS and CDC's efforts to ensure accurate proof of vaccination by obtaining proof of COVID-19 vaccination without being vaccinated," Ind. ¶ 18. Put simply, the "potential uses" of the forged cards—although obvious and alleged in the Indictment—is irrelevant to whether the Indictment sufficiently alleges the crime of conspiracy to defraud the United States under Section 371. Moreover, any suggestion that the government "cannot" prove aspects of the charged conspiracy is improper on a motion to dismiss, at which point the Court must accept all allegations as true. Nunez, 375 F. Supp. 3d at 238. The Court should reject McDermott's strained reading of the Indictment and deny her Motion.

Contrary to McDermott's assertion, Tanner v. United States, 483 U.S. 107 (1987), and United States v. Gurary, 860 F.2d 521 (2d Cir. 1988), do not support dismissing the Indictment; they represent another version of the same flawed argument that relies on a complete misunderstanding of the allegations in this case. The Indictment does not allege that Defendants' goal was to defraud the New York Department of Health as an "intermediary" or an entity "acting on behalf" of the CDC or HHS. (See McDermott Mot. at 9). As emphasized above, the Indictment alleges that Defendants, through several means, defrauded the CDC and HHS by obstructing their lawful government functions of administering COVID-19 vaccines and ensuring accurate proof of vaccination. (Ind. ¶ 20.) That the NY DOH played a role in overseeing vaccine administration, specifically by enrolling medical providers in New York State to distribute vaccines, does not change the object of Defendants' scheme: to affirmatively impede, obstruct, and defy the federal government's efforts to vaccinate the American public during an unprecedented global health crisis through the lawful function of its departments and agencies. (Id. ¶¶ 16, 20).

11

Having failed to sufficiently argue that the Indictment does not allege the obstruction of a lawful function of a federal agency, McDermott presents the other side of the coin by arguing that "the administration and distribution of COVID vaccinations and proof of vaccinations in New York was clearly a New York State function." (McDermott Mot. at 11.) This strawman argument also fails because the Indictment sufficiently alleges a conspiracy to defraud the HHS and CDC—not the DOH.

As discussed above, the Indictment details Defendants' alleged conspiracy to interfere with the CDC's and HHS's efforts to ensure accurate documentation of proof of COVID-19 vaccinations. (Supra, Section I.B.1; see also Ind. ¶¶ 16–20.) Whether, and to what extent, the DOH acted on behalf of the CDC and HHS during COVID-19 vaccine administration is not only a factual argument inappropriate to a motion to dismiss, but it is also irrelevant when the plain language of the Indictment alleges a scheme to defraud the CDC and HHS. (Ind. ¶¶ 16–20.) The Court should ignore this red herring.

Finally, McDermott is also wrong that there "is no allegation that the federal government's 'efforts to vaccinate the public and ensure accurate proof of vaccination' among the public at large are functions that stand on any statutory, regulatory, or established historical authority or precedent." (McDermott Mot. at 12.) As alleged in the Indictment, "[t]he CDC was a federal agency under the Department of Health and Human Services" that "was established to protect public health through the prevention of disease."[2] Moreover, McDermott provides no

---

[2] Although this is a factual issue not appropriate for argument at this stage of the litigation, HHS's authority in public health emergencies is based on several statutory provisions, including its broad authority to take appropriate action in response to public health emergencies under 42 U.S.C. § 247d(a), and its authority to collaborate with the CDC and others in maintaining the Strategic National Stockpile of vaccines under 42 U.S.C. § 247d-6b(a). In addition, HHS's interest in ensuring that vaccination cards are accurate and legitimate is codified

12

support for any contention that such "statutory, regulatory, or established historical authority or precedent" must be alleged in an Indictment. Nowhere in Hammerschmidt v. United States, 265 U.S. 182, 188 (1924) is such a requirement even discussed. And the fact that certain regulations of government agencies are discussed in Haas v. Henkel, 216 U.S. 461 (1910), and United States v. Rare Breed Triggers, LLC, 2023 WL 5689770 (E.D.N.Y. Sept. 5, 2023), does not change the Second Circuit's clear pronouncement that, at this stage, the government need only allege that "the scheme had the object of making it more difficult for the [federal government agency] to carry out its lawful functions and that the scheme depend[ed] on 'dishonest or deceitful means.'" United States v. Shellef, 507 F.3d 82, 104 (2d Cir. 2007).

      Notably, McDermott's "established authority" argument has already been considered and rejected by the Second Circuit. In United States v. Liu, No. 22-1082, 2022 WL 14177192, at *3 (2d Cir. Oct. 25, 2022), the defendant, charged with defrauding the United States in violation of Section 371, argued that the lawful government function must be "required by law or departmental regulation" and cited Henkel in support of this contention. The Second Circuit rejected this argument and agreed with the district court that "as long as an indictment 'identifies the lawful government functions at issue with some specificity,' it can survive a motion to dismiss" and that the functions "can be as seemingly general as the administration of agency initiatives." Id. In that case, where it was "common sense" that the function at issue—namely the administration of a visa program by the State Department and the Department of

---

at 42 U.S.C. § 1320b-10(a)(2)(B): "[n]o person may, for a fee, reproduce, reprint, or distribute any item consisting of a form, application, or other publication of the Department of Health and Human Services unless such person has obtained specific, written authorization for such activity in accordance with regulations which the Secretary [of HHS] shall prescribe."

13

Homeland Security—would be "clearly within the lawful functions" of that agency, such allegations were sufficient to withstand a motion to dismiss. Id.

Here, McDermott asks the Court to ignore "common sense" and hold that vaccine administration and public health is not related to the government function of HHS and the CDC, two of the key entities tasked with the preservation of public health in the United States. Such an argument is unavailing and should be rejected.[3]

---

[3] McDermott's cursory "as-applied" vagueness challenge is unsupported and fails for two reasons. First, the Circuit has made clear that Klein conspiracy reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." Coplan, 703 F.3d at 61. The alleged conspiracy to defraud the CDC and HHS of their lawful functions is thus plainly proscribed by the statute. And second, such a challenge is premature since "the Court requires full factual development at trial before it can determine whether [the statute] failed to provide Defendant[s] fair warning that [their] conduct was prohibited by law." See United States v. Phillips, No. 22-CR-138 (LJL), 2023 WL 5671227, at *13 (S.D.N.Y. Sept. 1, 2023).

CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to dismiss the Indictment.

Dated: Brooklyn, New York
November 2, 2023

                                              Respectfully submitted,

                                              GLENN S. LEON
                                              Chief, Fraud Section
                                              Criminal Division
                                              U.S. Department of Justice

                                              BREON PEACE
                                              United States Attorney
                                              Eastern District of New York

By:    /s/_____
           Patrick J. Campbell
           Trial Attorney, Fraud Section
           Criminal Division
           U.S. Department of Justice
           (718) 254-6366